**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE DIVISION**

| | |
|---|---|
| **WENDELL DWAYNE PRICE** | **CIVIL ACTION NO. 13-0790** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **CITY OF RAYNE, ET AL.** | **MAG. JUDGE PATRICK J. HANNA** |

**RULING**

Pending before the Court is the Motion for Summary Judgment [Doc. No. 40] filed by the City of Rayne ("the City"), Rayne Police Officers Joseph Cormier ("Cormier") and Joseph Credeur ("Credeur"), and Rayne Chief of Police Carroll Stelly ("Chief Stelly") (collectively, Defendants"). Plaintiff Wendell Dwayne Price ("Price") has filed an opposition memorandum, to which Defendants have filed a reply. [Doc. Nos. 46 and 49].

Price filed this civil rights action in state court on March 28, 2013, and it was subsequently removed to this Court on April 17, 2013. In his Complaint, Price alleges that his civil rights were violated when he was unlawfully arrested with the use of excessive force on April 2, 2012. Price's claims are asserted under 42 U.S.C. § 1983 and Louisiana state law.

In this motion Defendants argue that Price's false arrest and excessive force claims are barred under the principles set forth by the United States Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994). Officers Cormier and Credeur alternatively contend that they are entitled to qualified immunity, and that, therefore, Price's federal claims against them in their individual capacities should be dismissed. Chief Stelly contends that Price cannot establish a claim against him in his individual capacity. The City of Rayne and Officers Cormier and Credeur and Chief Stelly in their

official capacities seek summary judgment based on Price's failure to demonstrate that his alleged constitutional deprivations were caused by an official policy, custom or procedure of the City.

## I. FACTUAL BACKGROUND

On April 2, 2012, Officer Cormier was working a traffic detail in the City of Rayne when he was approached by a vehicle driven by a female with a male passenger suffering from facial injuries. The driver reported to Cormier that her passenger had been assaulted by three black men on a nearby street, Live Oak Street. She described the assailants, stating one was wearing a red shirt, another a white shirt, and all were accompanied by a tan dog.

After reporting the incident to dispatch, Officer Cormier went in search of the suspects. He spotted a man on Live Oak Street wearing a red shirt and conducted a field interview. During the interview, he noticed a tan dog wandering on the road near a residence on Live Oak Street. He proceeded to the residence and observed two other dogs in the yard with no fence. Also present was a black man wearing a white shirt, later identified as Price.

When Officer Cormier asked Price to put his dogs away, Price refused. By then, Officer Credeur had arrived at the scene, but he remained inside his vehicle. An altercation ensued in which Officer Cormier hit Price in the head with his baton. Ultimately, Officer Credeur ended the altercation by using his Taser on Price, who was then arrested.

On October 23, 2013, months after this lawsuit was filed, Price was convicted of resisting an officer, following a jury trial in the Louisiana Fifteenth Judicial District Court for Acadia Parish. He was sentenced to six months imprisonment, which was suspended, and was placed on six months probation with special conditions requiring payment of a $250.00 fine, court costs and the completion of an anger management program at his expense. Price's conviction was affirmed on

direct appeal by the Louisiana Third Circuit Court of Appeal on June 4, 2014, and Price's request for discretionary review was denied by the Louisiana Supreme Court on February 6, 2015.[1]

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson*, 477 U.S. at 252; *Hamilton*, 232 F.3d at 477.

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact. *Id.* (citing *Celotex*, 477 U.S. at 323).

All facts and inferences are construed in the light most favorable to the nonmoving party. *Brumfield*, 551 F.3d at 326 (5th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475

---

[1] *State v. Price*, 139 So.3d 1259 (La. App. 3rd Cir. 6/4/2014), *writ denied*, 158 So.3d 815 (La. 2/6/2015).

U.S. 574, 587 (1986)). However, the nonmoving party may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial. *International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Compania Mexicana de Aviacion, S.A.*, 199 F.3d 796, 798 (5th Cir. 2000) (citing *Anderson*, 477 U.S. at 248–49). After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Id.* (citing *Celotex*, 477 U.S. at 322).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex*, 477 U.S. at 325). The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**B. Federal Excessive Force and False Arrest Claims/ *Heck v. Humphrey***

It is an undisputed fact that, after this lawsuit was filed, on October 23, 2013, Price was convicted of resisting an officer. It is equally undisputed that Price's conviction has not been invalidated, but rather has been affirmed on direct appeal. The conviction is therefore final.

In *Heck v. Humphrey*, the United States Supreme Court determined that:

> [I]n order to recover damages for allegedly unconstitutional . . . imprisonment or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into

> question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 477.

The purpose of this doctrine is to avoid collateral attacks on valid convictions. If a § 1983 action would imply the invalidation of the plaintiff's conviction, the complaint should be dismissed unless the plaintiff can demonstrate that the conviction has already been expunged, reversed, or invalidated. *Arnold v. Town of Slaughter*, 2003 WL 25739166, at *1 (M.D. La. Sept. 5, 2003), *aff'd* 100 Fed. App'x 321 (5th Cir.), *cert. denied*, 543 U.S. 966 (2004) (citing *Heck*, 512 U.S. at 477). However, when the plaintiff's

§ 1983 action, if successful, "will not inherently imply the nullification of the criminal judgment against the Plaintiff, the action should be allowed to proceed." *Id.*

In the context of an excessive force claim, such as that presented here, the Fifth Circuit has provided clear guidance:

> It is well settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that "violation arose from the same facts attendant to the charge for which he was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " Although the *Heck* principle applies to § 1983 excessive force claims, the determination of whether such claims are barred is analytical and fact-intensive, requiring us to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction.
>
> * * *
>
> . . . a § 1983 claim would not necessarily imply the invalidity of a resisting arrest conviction, and therefore would not be barred by *Heck*, if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim. Accordingly, a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance. . .

*Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008).

Thus, "a plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction." *Id.* at 498 n. 14. This is because "factual assertions in pleadings are . . . judicial admissions conclusively binding on the party that made them." *Daigre v. City of Waveland, Miss.*, 549 Fed. App'x 283, 286 (5th Cir. 2013) (quoting *Davis v. A.G. Edwards & Sons, Inc*., 823 F.2d 105, 108 (5th Cir. 1987) (alterations and citation omitted)). Accordingly, when a plaintiff contends that he did not resist arrest, that is, that he committed no offense and was instead unjustly victimized, the Fifth Circuit has uniformly concluded that his excessive force claim is *Heck*-barred because the excessive force claim necessarily attacks the validity of the conviction for resisting arrest. *See DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656–57 (5th Cir. 2007); *Daigre*, 549 Fed. App'x at 287; *Walker v. Munsell,* 281 Fed. App'x 388, 390 (5th Cir. 2008); *Arnold v. Town of Slaughter*, 100 Fed. App'x at 324. Moreover, when there is no temporal and conceptual distinction between the factual basis for the conviction and the excessive force claim, that is, when the complained of use of force is applied during or simultaneously with the arrest, *Heck* applies. *Walter v. Horseshoe Entertainment*, 483 Fed. App'x 884, 887 (5th Cir. 2012); *Bush*, 513 F.3d at 495, 498 (use of force after arrest and handcuffing when resistance by the arrestee had ceased was temporally and conceptually distinct from the criminal conviction); *DeLeon,* 488 F.3d at 656-657 (finding that the complaint did not allege that the claims of excessive force were separable from the plaintiff's aggravated assault on the officer); *Pratt v. Giroir*, 2008 WL 975052, at *5 (E.D. La. Apr. 8, 2008) ("Fifth Circuit precedent is clear that whether the plaintiff alleges excessive force during or simultaneous with an arrest versus after an arrest results in distinct consequences under *Heck*.").

In such cases, the "[p]laintiff's claims are dismissed with prejudice to their being asserted again until the *Heck* conditions are met." *DeLeon*, 488 F.3d at 657 (quoting *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996)).

In *Arnold v. Town of Slaughter*, the Fifth Circuit examined an excessive force claim of a § 1983 plaintiff who had been convicted of resisting an officer in a Louisiana state court. Like Price, the *Arnold* plaintiff maintained that he did nothing to provoke the officer's action; he had done nothing wrong; and he had been viciously attacked for no reason. The Fifth Circuit concluded that the plaintiff's "suit squarely challenge[d] the factual determination that underlie[d] his conviction for resisting an officer." *Arnold*, 100 Fed. App'x at 324. If he prevailed, the plaintiff would establish that his conviction lacked a factual basis. As such, the court held the claim was barred by *Heck*.

Similarly, in *Daigre v. City of Waveland, Mississippi*, the Fifth Circuit concluded that the allegations in the plaintiff's complaint of innocence, non-resistance and compliance were not separable from, and inconsistent with, the facts underlying her conviction for resisting arrest. Her excessive force claim was therefore barred by *Heck.* 549 F.3d at 286-287.

In *Walker v. Munsell*, the Fifth Circuit held that the plaintiff's claim was "not that the officers used excessive force after he stopped resisting or to stop his resistance; his claim [was] based solely on his assertions that he did not resist arrest, did nothing wrong, and was attacked by the . . . officers for no reason." 281 Fed. App'x at 390. Thus, the Fifth Circuit concluded that the plaintiff's excessive force claim "squarely challenge[d] the factual determination that underlie[d] his conviction for resisting an officer," and if the plaintiff prevailed, "he [would] establish[] that his

criminal conviction lack[ed] any basis." *Id.* The plaintiff's excessive force claim was therefore barred by *Heck*.

Finally, in *Walter v. Horseshoe Entertainment*, the Fifth Circuit concluded that *Heck* applied to bar the plaintiffs' claims of excessive force because the claims were "not derived from distinct incidents." 483 Fed. App'x at 887. Rather, the plaintiffs' "convictions for resisting arrest and their claim of use of excessive force stem[med] from a single interaction [and they] argue[d] that they did not resist arrest . . . and that the force used against them was therefore excessive." *Id.* The court read that claim as an attack on the validity of their conviction for resisting arrest.

In this case, Price was found guilty of resisting an officer, a violation of LA. REV. STAT. 14:108. That statute provides, in pertinent part, as follows:

> A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention . . . .
>
> B. (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
>
> * * * *
>
> (b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.

Guilt under that statute requires evidence of intentional interference with the arresting officer or violence toward or resistance to the officer during a lawful arrest or lawful detention. Although Price was found guilty of resisting an officer, he made the following allegations in his complaint:

"Mr. Price was not breaking any laws at any time and was located on his own private property at all times during the entire course of the incident." [Doc. No. 1-1, ¶ ¶ 4 and 18(B)].

Officer Cormier "suddenly and without provocation" approached him using profane language and ordered him to put his dogs in the cage. [*Id.* at ¶ ¶ 5 and 18(A)].

"When Mr. Price questioned his command, Officer Cormier threatened to arrest Mr. Price and pulled out his Billy club striking Mr. Price repeatedly on the head." [*Id.* at ¶ 5].

Officer Credeur "arrived on the scene and without question joined in on the assault and began tasering" Price. [*Id.* at ¶ 6].

Price expressly alleges that "there were no threats of violence or violent acts, no battery of any police officer, and/or *no resistance of arrest* committed by Wendell Dwayne Price."[*Id.* at ¶ 16 (emphasis added)].

Price further alleges that he was "not breaking any laws at any time," was "not threatening the safety of anyone on the scene," and that Defendants acted "unlawfully [by] detaining, seizing, and arresting [him] without probable cause *and despite his compliance*." [*Id.* at ¶ ¶ 18(B)(C) and (E) (emphasis added)].

After Price "fell to the ground and was no longer able to move," he was handcuffed and transported to the police station for booking. [*Id.* at ¶ ¶ 6 and 7].

These allegations are mirrored in Price's state court criminal trial testimony wherein Price testified that on the day of the incident he was on his phone outside his residence when Officer Cormier pulled into his driveway, told him to put up his dogs or he would be arrested, and then, without provocation, pulled out his baton and began hitting him on the head and choking him. He was thereafter tased. Contrary to the testimony of the police officers, Price expressly denied being the aggressor, denied swinging at Cormier or placing him in a choke hold and expressly denied doing anything wrong prior to being attacked. [Doc. No. 40-7, pp. 357-358, 359, 372, 381-382].

Several other witnesses testified to a version of the incident similar to that testified to by Price. After discussing the conflicting version of events, on direct appeal, the Louisiana Third Circuit Court of Appeal affirmed Price's conviction noting that "[b]ased on the guilty verdict, the jury apparently accepted the officers' testimony and rejected the testimony of the conflicting witnesses."[2]

The effect of Price's allegations and trial testimony is clear. Price continues to maintain that he is innocent of the charge of which he was convicted, that he did nothing wrong, and that he had been viciously attacked without justification. These allegations relate to the entire encounter and not a distinct temporal or conceptual portion of it; that is, Price's claim is directed to the singular event, the use of force during and simultaneously with his arrest, which admittedly stopped immediately after Price stopped resisting. These allegations and trial testimony therefore distinguish Price's excessive force claim from those which survive *Heck*'s bar. Price's excessive force claim falls squarely within the confines of the Fifth Circuit's rulings in *Arnold, Daigre, Walker, Walter,* and their progeny, and as such is subject to dismissal under *Heck*.[3]

Price's false arrest claim is likewise subject to dismissal under *Heck*. To obtain Price's conviction for resisting an officer, the prosecution had to prove that the officers were making a

---

[2]*State v. Price*, 139 So.3d at 1268.

[3]Price attempts to avoid the above cited Fifth Circuit jurisprudence citing cases from the Third and Ninth Circuits, *Nelson v. Jashurek*, 109 F.3d 142, 145–46 (3rd Cir. 1997); *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996). The Fifth Circuit in *Arnold* cited these cases, and implicitly disagreed with their holdings stating "[b]oth the Ninth and Third Circuits have indicated that an excessive force claim would not necessarily challenge a plaintiff's conviction for assault during a stop. While recognizing this distinction, this circuit has recognized that certain convictions will prevent a plaintiff from bringing an excessive force claim." *Arnold*, 100 Fed. App'x at 323 (internal citations to *Nelson v. Jashurek*, 109 F.3d 142, 145–46 (3rd Cir. 1997) and *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) omitted).

lawful arrest or lawful detention. LA. REV. STAT. 14:108; *see also Arnold*, 100 Fed. App'x at 325. For this reason, the *Heck* Court observed that § 1983 unlawful-arrest claims cannot lie in cases in which "[a] state defendant is convicted of and sentenced for the crime of resisting arrest . . . [because] he would have to negate an element of the offense of which he has been convicted." *Daigre,* 549 Fed. App'x at 287 (quoting *Heck*, 512 U.S. at 486 n. 6). Allowing Price to proceed with his false arrest claim would necessarily attack one of the elements of the offense of which he was ultimately found guilty. *See id.*; *Walter,* 483 Fed. App'x at 887.[4] Accordingly, Price's false-arrest claim is barred under *Heck*.

For these reasons, Price's federal excessive force and false arrest claims against Officers Cormier and Credeur in their individual capacities will be dismissed with prejudice to their being asserted again until the *Heck* conditions are met. *DeLeon*, 488 F.3d at 657 (quoting *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996)).

The *Heck* analysis does not make an inquiry into the validity of the plaintiff's claims, but rather, considers whether they are inconsistent with a prior criminal conviction. Accordingly, the Court will address Price's remaining claims.

### C. <u>Official Capacity/ *Monell* Claims</u>

Price has also sued Officers Cormier and Credeur and Chief Stelly in their official capacities. An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent.

---

[4] *See also Thomas v. La. Dep't of Soc. Servs*., 406 Fed. Appx. 890, 898 (5th Cir. 2010) (per curiam) (unpublished) (false-arrest claim "would necessarily require the district court to re-evaluate the lawfulness of her arrest and criminal conviction because proof of" false arrest would require proving that the arrest was unlawful); *Cano v. Bexar Cnty., Tex*., 280 Fed.Appx. 404, 408 (5th Cir. 2008) (false-arrest claim *Heck*-barred where conduct that provided probable cause to arrest also formed the basis of conviction).

*Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985); *Hafer v. Melo*, 112 S.Ct. 358, 361 (1991); *McMillian v. Monroe Cnty., Ala.,* 520 U.S. 781, 784-85, (1997)[5] ; *Burge v. St. Tammany Parish,* 187 F.3d 452, 466 (5th Cir. 1999). In this case, Price has sued the City of Rayne; therefore, the Court treats the claims against Cormier, Credeur, and Chief Stelly as claims against the governmental entity for which they served, the City of Rayne.

It is well established that governmental liability under § 1983 must be premised on a government policy or custom that causes the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs* ., 436 U.S. 658, 694 (1978); *Board of Cnty. Comm'nrs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 n. 10 (5th Cir. 2000). A policy may be a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. *Burge*, 336 F.3d at 369.

> It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of Cnty. Comm'nrs of Bryan Cnty.*, 520 U.S. at 404.

---

[5] As the Supreme Court explained,

> a suit against a governmental officer "in his official capacity" is the same as a suit "'against [the] entity of which [the] officer is an agent,'" *Kentucky*. . . , 473 U.S. . . [at] 165 . . . (quoting *Monell v. New York City Dept. of Social Servs*., 436 U.S. 658, 690, n. 55 . . .(1978) and that victory in such an "official-capacity" suit "imposes liability on the entity that [the officer] represents," *Brandon* . . . , 469 U.S. . . [at] 471 . . . .

*McMillian,* 520 U.S. at 785 n. 2.

Price has submitted no evidence that the City of Rayne adopted or promulgated any official policy which encouraged police officers to unlawfully arrest persons or to use excessive force against persons arrested. Instead, Price argues that the City had an "ongoing custom and policy" of failing to follow procedures mandated by the Lawrason Act, LA. REV. STAT. 33:321, *et seq.*, in hiring and disciplining officers.[6] In support of these allegations, Price points to an alleged failure of the City to obtain City Council approval of the hiring of Officer Cormier, and the alleged failure of the City to bring recommended disciplinary action before the City Council against Cormier for the use of inappropriate language during this incident and against Officer Credeur for failure to report a January 15, 2012 accident in which Credeur hit a bicyclist, and the failure of the City to investigate the April 15, 2012 arrest of Officer Cormier for domestic abuse battery.

With respect to the hiring of Officer Cormier, Defendants have submitted documentation which establishes that Chief Stelly obtained the approval of then-Mayor Jim Petitjean and the Municipal Fire and Police Civil Service Board, as required under applicable civil service statutes.[7] [Doc. No. 49-1, p. 1]. Further, under the Lawrason Act, the appointment by Chief Stelly, approved by the Mayor, remains in effect unless rejected by the governing authority.[8] Price has presented no evidence demonstrating any such rejection by the City.

Furthermore, even if the hiring of Officer Cormier was not in compliance with the Lawrason Act, Price has presented no evidence of deliberate conduct on the part of the City and no evidence of a direct causal link between the City's alleged inaction and the deprivation of Price's

---

[6]LA. REV. STAT. 33:423(A), (C)(1)(a) and (C)(2)(a).

[7]LA. REV. STAT. 33:2531; LA. REV. STAT. 33:2533(2).

[8]LA. REV. STAT. 33:423(C)(2)(a).

Constitutional rights. Simply stated, there has been no showing that the complained of municipal action was taken with "deliberate indifference as to its known or obvious consequences" or that the alleged unlawful arrest and use of excessive force was the "plainly obvious consequence" of the allegedly improper hiring of Officer Cormier. *Board of Cnty. Comm'nrs of Bryan Cnty.*, 520 U.S. 407-409.

The same is true with respect to Price's allegations of alleged failure of the City to bring recommended disciplinary action before the City Council as required under the Lawrason Act. There has been no showing that the complained of municipal inaction was taken with "deliberate indifference as to its known or obvious consequences" or that the alleged unlawful arrest and use of excessive force was the "plainly obvious consequence" of the cited failures. Cormier's arrest for domestic abuse battery occurred after Price's arrest and his disciplinary action concerned the use of inappropriate language which occurred during Price's arrest. As such, these complained of disciplinary failures cannot be shown to have the requisite direct causal connection to Price's complained of Constitutional violations. Likewise, the failure of the City to bring before the City Council the recommended disciplinary action against Officer Credeur regarding an unreported bicycle accident has no causal connectivity whatsoever to the alleged Constitutional deprivations asserted herein.

For these reasons, summary judgment on Price's official capacity claims against Officers Cormier and Credeur and Chief Stelly, as well as the City of Rayne, will be granted.

**D. Individual Capacity Claim against Chief Stelly**

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)

(quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). In a § 1983 action, a supervisory official may be held liable only if: (i) he affirmatively participated in the acts that resulted in a constitutional deprivation; or (ii) he implemented unconstitutional policies that resulted in the plaintiff's injury. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011); *Gates v. Texas Depot of Prot. & Reg. Serve.*, 537 F.3d 404, 435 (5th Cir. 2008). To establish supervisor liability for constitutional violations committed by subordinate employees, the plaintiff must show that the supervisor acted or failed to act with deliberate indifference to the violation of others' constitutional rights committed by their subordinates. *Porter*, 659 F.3d at 446. Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 446-47; *see also Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011).

In this case, there is no allegation that Chief Stelly was present at Price's residence on the day in question or that he personally participated in Price's arrest or the alleged use of excessive force. The summary judgment evidence belies any such allegations. [*See* Doc. No. 40-10]. Furthermore, in accordance with the above analysis, Price has failed to show an unconstitutional policy with respect to the Lawrason Act which caused the alleged false arrest and use of excessive force by Officers Cormier and Credeur complained of by Price, and there is no evidence that Chief Stelly acted or failed to act with deliberate indifference to the constitutional violations allegedly committed by these two officers.

To the extent that Price suggests that Chief Stelly may be held personally liable for inadequate supervision or a failure to train his subordinates, that claim likewise is properly dismissed. A supervisory official may be held personally liable for inadequate supervision or a failure to train his subordinates only where the failure to train or supervise amounts to deliberate

indifference and is a proximate cause of a constitutional violation. *See Porter*, 659 F.3d at 446; *Brown v. Callahan*, 623 F.3d 249, 254 n. 1 (5th Cir.2010), *cert. denied*, 131 S.Ct. 2932 (2011). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Porter*, 659 F.3d at 446-47 (quoting *Connick*, 131 S.Ct. at 1360 (internal quotation marks omitted) (other citations omitted)). To establish that a state actor disregarded a known or obvious consequence of his actions, there must be "actual or constructive notice" "that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights" and the actor nevertheless "choose[s] to retain that program." *Id.* at 447 (citing *Board of Cnty. Comm'rs*, 520 U.S. at 409). Thus, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," because "[w]ithout notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights ." *Id.*

Defendants have submitted proof that both Officer Cormier and Officer Credeur were POST-certified, and that both officers were trained in the proper and safe use of the Taser. [Doc. Nos. 40-11, 40-12, 49-2]. There is no evidence for this Court to find that the Chief's training program was in any way deficient. Furthermore, Price has failed to submit any evidence to establish a pattern by these or any other officers of the Rayne Police Department of falsely arresting or using excessive force on members of the community. Therefore, Price has failed to demonstrate deliberate indifference on the part of Chief Stelly. "A complete failure of proof concerning an essential element of the nonmoving party's case is fatal and entitles the moving party to judgment as a matter

of law." *Ledesma v. Swartz*, 1998 WL 355480, at *2 (N.D. Tex. June 26, 1998) (citing *Celotex*, 477 U.S. at 322–23).

For these reasons, there is no basis for Price's federal individual capacity claims against Chief Stelly, and all of these claims will be dismissed.

**E. State Law Claims**

In light of the above, all federal claims asserted by Price against the City, Officers Cormier and Credeur, and Chief Stelly are dismissed. Accordingly, no federal question remains before this court.

A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); *Nowell v. Acadian Ambulance Service*, 147 F.Supp.2d 495, 510 (W.D. La. 2001). Indeed, when a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. *Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989). However, the dismissal should be without prejudice. *Id*. Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims asserted by Price. Those claims will be dismissed without prejudice.

## III. CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment [Doc. No. 40] is **GRANTED IN PART AND DENIED IN PART**. To the extent that Defendants move for summary judgment on Price's § 1983 claims against the City of Rayne, Cormier, Credeur, and Chief Stelly, the motion is **GRANTED**, and Price's claims are **DISMISSED WITH PREJUDICE.** To the extent that Defendants move for summary judgment based on a substantive analysis of Price's

state law claims, the motion is **DENIED**. However, having dismissed Price's federal claims, the Court declines to exercise supplemental jurisdiction over his state law claims, and those claims are **DISMISSED WITHOUT PREJUDICE**.

**MONROE, LOUISIANA,** this 3rd day of March, 2016.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE